UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
NOVSTAR SHIPPING AND MARINE   :   07 CV 3536 (GEL)
SERVICES CO., LLC,
                              :
           Plaintiff,             ECF CASE
                              :
    - against -
                              :
FORBES GOKAK LTD. a/k/a M/S
FORBES GOKAK LTD.,            :

           Defendant.         :
------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO VACATE MARITIME ATTACHMENT**

*Attorneys For the Plaintiff*
Kevin J. Lennon (KL 5072)
Lennon, Murphy & Lennon, LLC

# TABLE OF CONTENTS

**BACKGROUND** ...........................................................................................................................1

**ARGUMENT** ................................................................................................................................2

**POINT I**
PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF
UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f) ............................................2

**POINT II**
PLAINTIFF AND DEFENDANT ARE NOT "PRESENT" IN THE SAME DISTRICT .................5

**POINT III**
NOVSTAR HAS NOT BEEN GRANTED ANY SECURITY
ON ITS COUNTERCLAIM IN THE INDIAN PROCEEDINGS .......................................................9

**POINT IV**
COMITY IS IRRELEVANT TO THIS ACTION ............................................................................12

**POINT V**
THE COURT SHOULD NOT EXERCISE ITS "EQUITABLE DISCRETION" TO
VACATE THE ATTACHMENT SINCE DOING SO WOULD BE INEQUITABLE .....................15

Plaintiff, Novstar Shipping and Marine Services Co. Ltd. ("Novstar" or "Plaintiff") by and through its undersigned counsel, Lennon, Murphy & Lennon, LLC, respectfully submits this Memorandum of Law in Opposition to Defendant Forbes Gokak Ltd. a/k/a M/S Forbes Gokak Ltd. ("Forbes" or "Defendant") Motion to Vacate. Defendant's Motion should be denied because: (1) Plaintiff has sustained its burden of proof regarding the issuance of the subject attachment; (2) there is no other prohibition forbidding Plaintiff's attachment; (3) Plaintiff was not previously secured for its counterclaim against Forbes; and (4) it would be inequitable to vacate the Plaintiff's attachment.

## **BACKGROUND**

Plaintiff cites to various documents submitted by Defendant within its motion to vacate. As an initial matter, the following inaccuracies in the 'Background Facts' of Defendant's Memorandum of Law must be addressed:

- Novstar has not voluntarily submitted to the alleged jurisdiction of the High Court of Kerala in which the Defendant illegally arrested its vessel since the High Court of Kerala had no authority to issue an arrest warrant for Plaintiff's vessel which was not within the territorial waters of that Court at the time of the arrest warrant. Although Novstar has filed a claim for security on its wrongful arrest claim it should be noted that Novstar had never relied on the Indian proceedings as a basis for the attachment of Forbes' assets as security for its claim. *See Novstar's Verified Complaint attached as Exhibit 7 to Declaration of Timothy Semenoro.*

- The High Court of Kerala has never addressed Novstar's claim for wrongful arrest nor has it ever ordered Defendant to post security therefore;

- The security for costs currently posted by Defendant was posted *only* after having lapsed and was only re-posted in order to argue that such security for costs somehow is tantamount to security for Novstar's claim for wrongful arrest.

Defendant will cite to further inaccuracies and misstatements lodged by Defendant in its motion papers as is necessary herein. However, for the sake of brevity, and with corrections to the Defendant's misleading factual recitation of the parties' dispute and legal proceedings in India, Novstar directs the Court's attention to the facts as stated in the Declaration of Timothy Semenoro submitted in support of Forbes' motion to vacate.

## POINT I

### PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)

Supplemental Admiralty Rule B "permits a plaintiff to attach an absent defendant's property if the plaintiff has an admiralty or maritime claim *in personam*." See Reibor Int'l Limited, 759 F.2d 262 (2d Cir. 1985). Quasi in rem process can be used to attach or garnish a wide variety of tangible and intangible property. "Rules B(1) and B(3) refer to goods, chattels, debts, credits and effects. The terms "goods," "chattels," and "effects" have been interpreted to apply to virtually all tangible property. . . In addition to tangible property, service of quasi in rem process can also be used to reach a variety of intangible property, such as bank accounts, accounts receivable, and other debts owed to the defendant." *See 29-0705 Moore's Federal Practice- Civil § 705.04.*

In Winter Storm Shipping v. TPI, 310 F.3d 263 (2d Cir. 2002) the Second Circuit Court of Appeals held that an electronic funds transfer was attachable "property" within the meaning of Rule B. The Second Circuit also held that the definition of what constitutes attachable property "is remarkably broad." The Winter Storm court held as follows:

2

> Initially examining admiralty law, as we must, we encounter Rule B(1) itself, which provides that a maritime plaintiff may "attach the defendant's tangible or intangible personal property." It is difficult to imagine words more broadly inclusive than "tangible or intangible." What manner of thing can be neither tangible nor intangible and yet still be "property?"
>
> * * *
>
> Rule B also permits a plaintiff to attach intangible items, such as debts owed to the defendant. Such items may be attached even if they have not yet matured or have only partially matured. Of course, the defendant's entitlement to the credit or interest in the debt must be clear.

Winter Storm Shipping, 310 F.3d at 276.

Under Supplemental Rule B "an order of maritime attachment must issue upon a minimal prima facie showing" provided that the defendant cannot be "found within" the district in which the assets are sought to be attached. But under Supplemental Rule E(4)(f), any person claiming an interest in the attached property shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the attachment should not be vacated or other relief granted.

However, as confirmed by the Second Circuit Court of Appeals in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 2006 U.S. App. LEXIS 19302 (2d Cir. July 31, 2006), the Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but only to determine if the technical requirements of the Rule were met. So long as the plaintiff establishes that it has alleged a prima facie maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment must be upheld. See Aqua Stoli, 2006 U.S. App. LEXIS 19302, *28-29.

While Forbes relies upon its own unique, and quite incorrect, view of the guidance provided by the Aqua Stoli decision in terms of three very limited circumstances upon which a district court may equitably vacate a maritime attachment, it also fails to heed the guidance provided by the Aqua Stoli court regarding the scope of review and required burden of proof on

3

a motion to vacate a maritime attachment under Supplemental Rule E(4)(f). Rather, it seeks to rely on pre-Aqua Stoli decisions in Allied Maritime, Inc. v. The Rice Corp., 2004 U.S. Dist. LEXIS 20353 (S.D.N.Y. Oct. 12, 2004), *reconsideration denied*, 361 F.Supp.2d 148 (S.D.N.Y. 2004) and Royal Swan Navigation Co. v. Global Container Lines, 868 F. Supp. 569 (S.D.N.Y. 1994) in a very improper effort to convince this Court that Rule B attachments are *draconian* and that, as a result, Rule B plaintiffs such as Novstar are beset by a heavier burden than is in fact required.

In fact, both the Allied Maritime and Royal Swan Navigation cases were found to have been expressly overruled and rejected by the Second Circuit's Aqua Stoli decision as explained by Chief Judge Wood in Tide Line, Inc. v. Easttrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *12-13 (S.D.N.Y. Aug. 15, 2006). Forbes' intentional cherry picking of those parts of the Aqua Stoli decision it finds beneficial, which is incorrect in any event, should not be countenanced by this Court.

In reality, the burden imposed is, as per Aqua Stoli, to simply show that the technical requirements of Rule B have been met. Once a plaintiff has established the technical requirements stated in Rule B, the burden shifts to the defendant to prove the limited basis for vacatur. The Aqua Stoli decision provided that a defendant may only vacate an attachment upon three *limited* bases. *See* Aqua Stoli, at *27. Plaintiff respectfully submits that none of those grounds are present here, notwithstanding Defendant's wholesale inaccurate reading of the Aqua Stoli decision.

It is noteworthy that Forbes does not attack the attachment on procedural grounds, e.g., whether plaintiff's claim is sufficiently maritime in nature, whether the defendant may be "found" within the district, or whether the defendant has an interest in the property. Rather, as

4

was the situation in Aqua Stoli, the Defendant is challenging the attachment on equitable grounds. Defendant's motion is based on faulty premises, however, because as will be shown more fully herein (a) the Plaintiff and Defendant are not located in the same district, (b) Forbes illegal arrest of Plaintiff's vessel cannot serve as the foundation upon which to assert that both Plaintiff could obtain *in personam* jurisdiction over Defendant or that its illegal action, for which it should gain no favor under the law, has any relevance to this ancillary proceeding brought solely to obtain security for Plaintiff's forthcoming judgment to be obtained in another jurisdiction and (c) the equities weigh in favor of Plaintiff since Defendant enjoys full security for its alleged claim against the Plaintiff whereas Plaintiff, absent this attachment, has been granted zero security on its counterclaim by the Indian court.

Accordingly, as is discussed more fully herein, Defendant's Motion must be denied.

## POINT II

## **PLAINTIFF AND DEFENDANT ARE NOT "PRESENT" IN THE SAME DISTRICT**

The Aqua Stoli decision provided that a Supplemental Rule B attachment must be vacated upon a showing by the defendant that "... the plaintiff could obtain in personam jurisdiction in the district where the *plaintiff is located* ..." Id. at *29. Curiously, although Forbes addresses this portion of the Aqua Stoli decision in its brief, it fails to ever address where Novstar is located! Certainly, as set out above, Novstar should not be deemed to be located in India because it filed defensive pleadings (having reserved all rights) within Forbes' wrongful vessel arrest proceeding. See *Novstar Counter Affidavit* annexed as Exhibit 6 to Declaration of Timothy Semenoro. Further, and to be quite clear, the Aqua Stoli analysis, which is centered on the Rule B plaintiff's location, does not concern itself where the defendant is located (a defendant's "presence" in the district being, of course, a statutory bar to a Rule B attachment), or

5

where it may have illegally arrested a vessel. Rather, it is where the Rule B plaintiff is located, that matters under the Aqua Stoli analysis.

Defendant contends that its own commencement of a vessel arrest in the Indian courts, which necessarily spurred Plaintiff to intercede and defend itself, has somehow caused Plaintiff to be located within the jurisdiction of the Indian court where the Defendant is supposedly located. However, this is a hollow argument for a number of reasons.

First, the Aqua Stoli court did not come to its conclusion about prohibiting attachments when both parties are <u>located</u> in the same district but one party obtains an attachment in another jurisdiction in a vacuum. Rather, a review of the decision provides that the Second Circuit carefully considered Rule B precedent and, in particular, the fact that for a long period of time, prior to the creation of Supplemental Rule E(4)(f), the only viable ground upon which to challenge a Rule B attachment was to show to the court that the attachment should not have issued because the Defendant could be found in the district.

Starting with consideration of Antco Shipping v. Yukon Compania Naviera, S.A., 318 F. Supp. 626 (S.D.N.Y. 1970), the Aqua Stoli court reviewed how courts presented with motions to vacate Rule B attachments analyzed a defendant's purported presence within the district. Following the Antco Shipping case the court then cited to nine (9) additional cases in which "presence in the district" analysis was the stated basis for consideration of motion to vacate. A review of all the cases cited by the Aqua Stoli court fails to identify a single case in which the defendant obtained a vacatur of the attachment by showing it was present in the district because it had arrested the plaintiff's vessel in another *country* (much less another U.S. judicial district) thereby forcing the plaintiff to appear in that action to obtain the release of its vessel! However, according to Forbes' interpretation, this would now be a sufficient basis to avoid attachments

6

under Aqua Stoli. Thus, the Aqua Stoli decision lends no support for Forbes' flawed premise that due to its own filing of a lawsuit in the Indian courts that this was somehow made Novstar present in the same *district* as Forbes.

Second, although not commented on by Forbes, Novstar had no choice but to appear and defend itself in the wrongful arrest obtained by Forbes. Otherwise, its vessel would still be under arrest and it would have failed to mitigate its damages. Unbelievably, despite the patent illegality of the Forbes arrest of Novstar's vessel, it finds fault against Novstar for not obtaining the release of its vessel until December 6, 2006 when the vessel was only arrested as of November 14, 2006! The level of Forbes' protests can scarcely be imagined in the event Novstar had not timely appeared and defended itself in the Indian courts and obtained the release of its vessel!

Further, and quite contrary to Forbes argument, Novstar has at all times objected to the alleged jurisdiction of the Indian court to arrest its vessel since the court issuing the arrest papers was not located within the Indian territorial waters where Novstar's vessel was located. This can be seen in the second paragraph of Novstar's Indian counsel A.Z. Mookthar's counter affidavit. Mr. Mookthar's counter affidavit states as follows:

> *At the very outset it is respectfully submitted that these Respondents hereby challenge the very maintainability of the Sp.J.C. inter alia on the question of jurisdiction. This counter affidavit is filed by these Respondents raising the said specific ground of maintainability as a preliminary issue and seeking dismissal of the jurisdiction case, vacating of the Order of Arrest dated 14th November 2006 and seeking release and / or refund of the security put up by the Respondents. It is respectfully pray that this Counter affidavit being filed for the said limited purpose may not be treated as a voluntary submission to the jurisdiction of this Hon'ble Court.*

*See Exhibit 6 to the Declaration of Timothy Semenoro.* As a result, the arrest, improper on its face, is also technically invalid since the issuing court was bereft of jurisdiction to issue the warrant allowing for the vessel to be arrested.

It cannot be seriously maintained that a foreign party can avoid a Supplemental Rule B attachment simply by wrongfully arresting its adversaries' vessel. This would create the highly inequitable result that when the adversary takes efforts to protect its rights, and also to properly mitigate damages which may flow from such illegal efforts of its adversary, that this then creates a shield to assert that both parties are "located" in the same district so that as per Aqua Stoli a Supplemental Rule B attachment is not possible. It is illogical to find that wherever the parties may have choose as the locus for the formal resolution of their dispute that they then be deemed "located" in that district, or country as the case is here, for purposes of determining whether maritime attachment under Supplemental Rule B is available. This is, without a shred of a doubt, sheer folly and not one of limited bases for vacatur intended by the Aqua Stoli court.

Third, Forbes fails to cite to any precedent standing for the proposition that by filing a lawsuit in another *country* that a party thereby somehow establishes a presence in a U.S. judicial district, or can be deemed to be located in any U.S. judicial district, for the purposes of Rule B. Understood properly the Aqua Stoli restriction on attachments when both litigants are located in the district is designed to prevent a potential inequity that can arise from a situation in which although in personam jurisdiction may be invoked by and against *both* parties because they are located in the same district, one of those parties can gain an advantage by obtaining an attachment in another jurisdiction where its adversary is susceptible to having its tangible or

8

intangible property attached.[1] The Aqua Stoli decision cannot be reasonably understood to cover parties such as Novstar, a foreign company duly organized and operating under the laws of the United Arab Emirates, and Forbes, another foreign company duly organized and operating under the laws of India, each with zero contacts with this or any U.S. judicial district,.

For all of the foregoing reasons, Forbes' motion to vacate must be denied.

## POINT III

### NOVSTAR HAS NOT BEEN GRANTED ANY SECURITY ON ITS COUNTERCLAIM IN THE INDIAN PROCEEDINGS

It is without argument that a Rule B attachment is impermissible in circumstances where the Rule B plaintiff has already obtained security for its claim. In another contorted view of the Indian proceedings, Forbes seeks to convince this Court that Novstar is vested with security for its counterclaim. Yet, even a cursory review of the facts and procedural history of the Indian proceedings shows that Forbes is wrong in its assertion.

First, Forbes overreaches badly when it construes the fact that the Indian court required it to post security *for costs* at the time it was granted an ex parte order authorizing arrest of Plaintiff's vehicle as the "proper amount of security for Novstar's claim for the wrongful arrest of the vessel …" *See Forbes' Memorandum of Law in Support at 5 and Declaration of Timothy Semenoro at ¶¶ 14 and 17*. This is simply incorrect.

A simple review to the Indian court Order shows that the Court did not consider any demand for counter security. The Order states as follows:

> *However, I do not think petitioner can have unconditional order because **if the case is not to be proved to be genuine**, the detention of the vessel will lead to heavy loss and hardship to the Shipping Company. In the circumstances this Order is passed on condition that petitioner will furnish at least by day after*

---

[1] However, Novstar questions the soundness of this so-called restriction in situations where the party suffering the attachment can swear out a counter-claim under Supplemental Rule E(7) and obtain counter security thereby re-creating a level playing field and ameliorating any concerns about abuse of the attachment remedy.

9

> *tomorrow Bank Guarantee for Rs.5 lakhs in favour of the Registrar General of this Court encashable on orders of this Court **for payment of cost**, if any to the Shipping Company.*

*See Indian Court Order attached as Exhibit 2 to Declaration of Timothy Semenoro.*

The Indian Court Order is more properly understood to provide for some measure of recoupment by Novstar of its costs if, at the end of the day, the Forbes arrest is adjudged to be invalid. It cannot be the case that the Indian Court actually reviewed the merits of Novstar's claim for wrongful arrest since Novstar's counterclaim was only lodged on January 18, 2007 whereas the Indian Court Order was issued on November 14, 2006!

The procedure employed by the Indian Court is essentially the same as that Supplemental Rule E(2)(b) which allows for a district court to require a Rule B plaintiff to post security for "all costs and expenses that shall be awarded against the party ..." Provision of security for costs and expenses, required at the time the underlying ex parte application for security via attachment or arrest is filed, and wholly independent of an application for security for counterclaim, is simply wholly unrelated to security for a counterclaim.

The small amount of compulsory security required by the Indian Court serves only to provide a basic measure of recovery of costs and expenses in the event that Forbes' fails to prove its case and its arrest is determined to be invalid thereby having necessitated Novstar to incur costs and expenses. This, of course, is wholly independent of consequential damages shown to have been incurred as a result of the wrongful arrest for which Novstar has obtained Rule B security on its substantive counterclaim.

Further, and although not addressed by Forbes, the fact of the matter is that the Indian Court Order requiring provision of security for Novstar's costs and expenses was violated by Forbes. The original bank guarantee lapsed as of May 15, 2007 (see Exhibit 3 to Declaration of Timothy Semenoro) and was only re-issued as of June 7, 2007 (see Exhibit 4 to Declaration of

10

Timothy Semenoro). This second bank guarantee is valid only up to November 15, 2007. The scant period of time covered by each bank guarantee is further evidence of the inconsequential nature of the so called security. What should be evident, however, is that the bank guarantee was only re-posted by Forbes in order to raise the hollow argument that such a *de minimis* sum was intended by the Indian High Court as security for Novstar's counterclaim.

To the extent that Forbes relies on information provided by its Indian counsel as paraphrased within the Declaration of Timothy Semenoro at ¶14, this should be rejected since this is clearly incompetent evidence. Forbes' attempt to show to this Court what its Indian lawyer has apparently "confirmed" to its New York counsel is improper in form as it does not reflect the personal knowledge of Mr. Semenoro but rather that of (allegedly) the Indian counsel. This failure of competent evidence is seen in Forbes' purported reliance on a section of the Bombay High Court Rules (which would seem on their face inapplicable since the pending Indian action is before the High Court of Kerala) concerning attorneys' fees since this Court has no basis upon which to accept this reference as coming from an individual vested with personal knowledge and information concerning India's substantive or procedural law. *See* Staples, Inc. v. W.J.R. Associates, 2007 U.S. Dist. LEXIS 24769, *5-6 fn. 2 (E.D.N.Y. March 30, 2007); Doe v. National Bd. of Podiatric Med. Examiners, 2004 U.S. Dist. LEXIS 7409, *10-11 (S.D.N.Y. May 5, 2004) citing Hollander v. American Cyanimid Co., 172 F.3d 192, 198 (2d Cir. 1999).

In any event, it also bears mention that this alleged provision of Indian law would seem to fly in the face of the award of costs levied by the High Court of Kerala in the event that Forbes' arrest is determined not to be genuine and thus exposes Novstar to cost and expense.

## POINT IV

## **COMITY IS IRRELEVANT TO THIS ACTION**

The instant action is an ancillary proceeding filed by the Plaintiff to obtain security for its claim against Forbes. The merits of the Novstar's claim for wrongful arrest is not to be deiced by this Court. There is nothing impermissible or unusual about Plaintiff's filing of this ancillary proceeding. *See* Nederlandsche Handel-Maatschappij v. Sentry Corp., 163 F. Supp. 800, 802 (E.D. Pa. 1958); Bohlke v. Airport Terminal Svcs., 1975 U.S. Dist. LEXIS 12530, *8-9 (D.V.I. 1975). Thus, this court need not be "... concerned with the merits of the controversy." *See* Nederlandsche Handel-Maatschappij, 163 F. Supp. at 802. Plaintiff has not, and represents that it will not, seek to litigate the merits of the parties' dispute herein. Stated succinctly "attachment is an ancillary proceeding to aid in the collection of whatever judgment might be secured; it has nothing to do with the merits of [the] case." *See* Hyde Constr. Co., Inc. v. Koehring Co., 388 F.2d 501, 509 (10th Cir. 1968).

The limited jurisdiction of this court is due to "... the nature of the jurisdiction the court acquires by a Rule B attachment is properly denominated as 'quasi in rem' because any judgment rendered is limited to the value of the attached property." *See* Teyseer Cement Co. v. Qatar National Ins. and Reinsurance Co., 794 F.2d 472, 477 (9th Cir. 1986) citing Belcher Co. v. M/V Martha Mariner, 724 F.2d 1161, 1164 (5th Cir. 1964); Maryland Tuna Corp. v. MS Benares, 429 F.2d 307, 311 (2d Cir. 1970) and Engineering Equipment Co. v. S.S. Selene, 446 F. Supp. 706, 709 n.9 (S.D.N.Y. 1978); and East Asiatic Co. v. Indomar, Ltd., 422 F. Supp. 1335, 1341-42 (S.D.N.Y. 1976). The maritime attachment remedy thus understood and pursued within an ancillary proceeding shows that there is no effort by the Plaintiff to resolve the underlying dispute in New York.

To the extent that Forbes relies, without indicating, on the so called "first-filed" rule (i.e., the Indian action was filed before the instant action) this is also wholly unavailing. First off, Forbes should not be permitted to profit from the legal misadventure it has caused by illegally arresting Novstar's vessel. Further, and to the point the "first-filed" rule simply does not pertain to this ancillary proceeding.

"The first filed rule is not to be applied mechanically, but is intended to aid judicial administration by acting 'as a presumption' that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action. The party opposing application of the first-filed doctrine has the burden to show that special circumstances exists to justify an exception." *See* Kellen Co., Inc. v. Calphalon Corp., 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (internal citation omitted). The special exception here is that this is an ancillary proceeding in which the Plaintiff does not seek to proceed on the merits of the underlying claim. This court has previously refused to mechanically apply the rule. *See* Captial Records, Inc. v. Optical Recording Corp., 810 F. Supp. 1350, 1356 (S.D.N.Y. 1992). This court should likewise refuse to mechanically apply the first-filed rule in this case.

There would be no judicial efficiency achieved by dismissing the subject action pursuant to the "first filed" rule because the New York court has not, and will not, be asked to adjudicate the merits of the parties' dispute. Hence, the "first-filed rule" is inapposite to these circumstances since there will be no duplication of efforts. The two pending actions do not have the same purpose which is understood to be a hallmark of when courts should invoke the rule to dismiss a subsequent action. *See* Barber-Greene Co. v. Blaw-Knox Co., 239 F.2d 774, 778 (6th Cir. 1957).

13

There is <u>no</u> danger here that the New York court will exercise (or be asked to exercise) subject matter jurisdiction over the parties dispute in order resolve the merits. This situation is somewhat analogous to situations where several courts have concurrent jurisdiction over a res. The Supreme Court stated as follows:

> While a federal court which has taken possession of property in the exercise of the judicial power conferred upon it by the Constitution and laws of the United States is said to acquire exclusive federal jurisdiction, the jurisdiction is exclusive *only so far as restriction* of the power of other courts is necessary for the federal court's appropriate control and disposition of the property.

*See* <u>U.S. v. Klein</u>, 303 U.S. 276, 281 (1938) (emphasis added) citing <u>Penn General Casualty Co. v. Pennsylvania ex rel. Schnader</u>, 294 U.S. 189 (1935) and <u>Leadville Coal Co. v. McCreery</u>, 141 U.S. 475, 477 (1891). Here, Plaintiff has does not ask for an adjudication of substantive rights and reiterates that this action was filed solely for limited use of the ancient remedy of maritime attachment to secure a judgment for a maritime claim.

Nonetheless, Forbes incredulously claims in its motion papers that as a matter of international comity that this Court should abstain from deciding the issue of the proper quantum of security because the merits of the parties' dispute is before the High Court in India. However, as set out above, Novstar has not voluntarily submitted to the jurisdiction of that court and, in any event, as the instant action is one for ancillary relief only, this Court need not consider whether it must abstain from deciding the substantive merits of Novstar's counterclaim since that is not an issue before this Court and thus there are no "parallel proceedings" due to which comity even can be an issue.

In short, Forbes' comity argument is hollow and warrants no quarter from this Court.

## POINT V

## THE COURT SHOULD NOT EXERCISE ITS "EQUITABLE DISCRETION" TO VACATE THE ATTACHMENT SINCE DOING SO WOULD BE INEQUITABLE

The Aqua Stoli decision handed down by the Second Circuit is relied upon by Defendant with respect to the argument that the facts here fit within one of the three narrow situations allowing for a district court to vacate a maritime attachment. However, the Aqua Stoli decision clearly noted that the ability of a district court to vacate an attachment is based on "equitable discretion." *See* Aqua Stoli, 2006 U.S. App. LEXIS, 19302, *27. Thus, this Court should properly consider the equities at least insofar as whether vacating Plaintiff's attachment would comport with notions of equity. For the following reason, Plaintiff submits that vacatur would be highly inequitable.

This Court should <u>not</u> exercise its equitable discretion to vacate the limited security that Plaintiff has thus far obtained from Defendant since by doing so the Court will afford Defendant a considerable advantage Defendant has thrice arrested Plaintiff's vessel. While Plaintiff managed to secure the release of its vessel from the illegal arrest effectuated by Defendant in India, it could only do so by posting substitute security of approximately $83,500. The vessel arrest fully secures the Defendant's purported claim against Plaintiff.

Thus, if the Plaintiff's attachment is vacated it will be left with ***no security*** for its wrongful arrest claim whereas Defendant will remain totally secured. This clearly would be entirely inequitable.

For all of the foregoing reasons, Forbes' motion to vacate should be denied.

15

Dated: July 11, 2007
      New York, NY

                The Plaintiff,
                NOVSTAR SHIPPING AND MARINE
                SERVICES CO., LTD.

By: *Kevin J. Lennon*
      Kevin J. Lennon (KL 5072)

LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 – fax

## AFFIRMATION OF SERVICE

I hereby certify that on July 11, 2007, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: *Kevin J. Lennon*
Kevin J. Lennon (KL 5072)